Appellate Court for the 2nd Judicial District is now back in session. The Honorable Robert B. Cameron presiding. Please be seated. Your Honor, the final case on the docket this morning is 2-14-20507. Marriage of Michelle Steele. Appellate and cross-appellant. And Chad Schroeder, Respondent Appellant and cross-appellate. Arguing on behalf of the Appellant cross-appellate, Mr. Matthew D. Elster. Arguing on behalf of the Appellate cross-appellant, Mr. Sean M. Townley. Thank you. Mr. Elster, you may proceed. Thank you, Your Honor. Good morning, Your Honors, Counsel, and may it please the Court. My name is Matthew Elster from Bierman, LLP, and I represent the Appellant cross-appellate Chad Schroeder in this matter. We are here today asking this Court to correct what we perceive as three fundamental errors of law committed by the Court below. First, and I believe most glaringly in the Court, impermissibly treated withdrawals from Mr. Schroeder's individual retirement account as income for child support purposes, effectively disregarding both the terms of the MSA and double-counting income insofar as under those terms my client had paid support on the funds contributed to that IRA prior to withdrawal. No, you don't have to have the money to be recurring in order to be income, correct? Correct. Under Rogers and McGrath, it's not the recurring nature that constitutes a definition of income. It's whether it increases your wealth and facilitates your ability to pay supports. Okay, and taxable is not even relevant. Right, and I would argue, Your Honor, that the only relevant difference between this case and McGrath are the tax consequences. An individual retirement account that is self-funded, as Your Honor has held in the Verheens case as the O'Daniel Court recognized the Fourth District, IRAs are self-funded. It's not a pension plan. No, they're self-funded, but the principal amount that was there at the time of the MSA, should that be treated differently than the interest that is made on that IRA as a result of the principal? I would concede yes, Your Honor, and I think that that's what this Court held in Verheens. That's what O'Daniel said, and that's what the First District in Budorek said, and I might be butchering that pronunciation. But that didn't happen here. The Court below didn't conduct that analysis. It simply concluded that 100 percent of the sums my client withdrew from his IRA for income, notwithstanding the fact that under the MSA, my client's voluntary retirement contributions were not excluded from his income for purposes of calculating supports, such that if he made $100,000 over the $187,000 cap, he paid Ms. Schroeder $30,000, even if he maxed out his IRA contributions for the year. Under the trial court's ruling, if he put $7,000 into his IRA in January from income year in that month and pulled that money out in December, he would pay 30 percent on the money that went in, gross, and then 20 percent net on the money that came out. And I concede that no analysis was conducted below as to what portion of those funds were principal versus interest. So you're submitting that that's double counting? It is 100 percent double counting, almost by definition, Your Honor. And I think it's important to note how this matter came before this court and what was filed that brought us here. This was not a modification proceeding, which traditionally how these matters come before a trial court. And this is not an academic distinction. First, Ms. Schroeder was the petitioner below. She was the movement. She was the party with the burden of proof. Counsel, you said it's not a modification proceeding? It was not a modification proceeding. Ms. Schroeder filed a rule to show cause or a petition to enforce. So this is a contempt proceeding essentially is what you're saying? Arguably. And I can get into that. Count one of the petition. And you say arguably because? Because count one of Ms. Schroeder's petition only sought enforcement. It did not actually request a finding of contempt. Counts two through five of the petition. Was the enforcement a euphemism for reinterpretation or interpretation of contentious issues? I can't speak for Ms. Schroeder's former trial counsel did, Your Honor. But I can tell you that the case law is very clear that in the context of an enforcement or contempt proceeding, a trial court is not permitted to rewrite a marital settlement agreement. Okay. No problem. On a different topic. It says clearly, I think it's your brief, that $234,425 was in the IRA at the time the judgment for dissolution of marriage was entered. That's correct. Is that accurate? Yes. I believe that was on the balance sheet. I would assume that there were. But is there anything in the record about it? There was not, Your Honor. And again, this goes back to the point I was making. Because this wasn't a modification proceeding, the parties' respective finances weren't at issue. The trial court was not tasked with looking at Mr. and Mrs. Schroeder's abilities to pay. It was not tasked with looking at their respective financial positions. It was not tasked with looking at the needs of the child or the needs of Ms. Schroeder. I mean, and again, I'm not criticizing, but was it relevant? If your position is it's not income, then, you know, McGrath is clearly saying don't double count. There's a lot of cases saying don't double count. Certainly the fact that he made additions, I assume, you know, that would have been income to him. He would have paid child support on that one way or the other, whether it was over $187,000 or not. He would have been paying child and maintenance on it. But isn't it relevant to your defense that it shouldn't be considered income because it would have been double counted? I think it is, Your Honor. One of the problems with the record is that it appears that the issue of these IRA contributions, it wasn't pled. It was nowhere in Ms. Schroeder's petition. Was this to a sponte by the judge? It appears to be. If you look at the record, Ms. Schroeder filed a petition in February of 2023. The first mention in the record of IRA contributions being treated as income comes in mid to late April 2024, shortly before the trial and the trial course decision. You know, if this was well pled, if this was a modification proceeding, if there was clear indication that this was going to be the primary issue, I think the case would have been tried differently by both parties. But this goes back to what I said at the beginning about burdens. If Mr. Schroeder had sought modification, I 100% agree that it would have been proper for him to come before the court with evidence to show what was principle, what was appreciation. He was on the defense. In defense of what the trial court treated as contempt, even though it wasn't pled. In contempt proceedings, the burden is initially on the movement to prove the existence of a clear order and to show what was owed to establish noncompliance. In this case, Your Honor, neither party put on that evidence. And I think the first district in Buttigieg has provided the correct road map for what to do. In that case, we had the opposite situation where the former wife's IRA contributions, IRA withdrawals rather, were excluded entirely. Similar result where there was no analysis of what was principle and what was income, but it was excluded from her income rather than included. And in paragraph 80 of that decision, the first district remanded with instructions for the trial court to determine what portion of the IRA withdrawals, if any, were attributable to interest versus what was principle, and then suggested if that cannot be determined, the court should consider the ratio of principle to interest on a pro rata basis at the time of distribution. And I think that's what should have happened below. It didn't. We were asking for this court to remand this matter so that that analysis can take place. For all we know, Mr. Schroeder may have lost money. Didn't he concede to a certain dollar amount? That was withdrawn. As to what to give his wife. I'm sorry. Maybe I'm confusing this with another case. But I thought there was a dollar amount that he There were stipulations as to what was underpaid on. I believe it was an employment income and some perquisites, such as HSA contributions for a few hundred dollars, things of that nature. Now, I imagine counsel is going to come before your honors and ask you to file the Eberhart and Lindman cases and treat 100 percent of these withdrawals as income. I would submit that those cases are no longer good law. As this court recently acknowledged in Verheens and more importantly, as the Supreme Court acknowledged both McGrath and Dom Schell in 2021, the double counting issue cannot be ignored. That issue was not raised at all in Lindman case. And it is clear to me under recent Supreme Court precedent that you cannot factor in money when earned for purposes of child support when deposited into account and then do the same again when it's withdrawn. And the Dom Schell case said, quote, it would be improper for funds to be considered income when first received or earned and then again when they are withdrawn. That's paragraph 51 of that decision. Now, may I ask, you said in your brief, I think, that you agree with trial court's determination that it was not income for purposes of the maintenance. Do I have that correct? Yes. Dom Schell says, paragraph 39, thus, you know, they go through the statutory definition of income and then conclude with citation at the end of paragraph 39, thus, income has the same meaning with regard to maintenance and child support. I agree with that statement, Your Honor. It's clear under Supreme Court case law. It's clear under discussion. So what is or isn't bottom line? So our position is if it's not income for maintenance, it also cannot be income for trial support. And this is where I think the trial court compounded its error when it essentially modified the party's unallocated support provisions regarding the true-up and said, I'm going to draw this arbitrary distinction between maintenance and child support just with respect to these IRA withdrawals and decided without any anchor in the record of the MSA that those withdrawals would be subject to a 20% net child support award. So she modified the MSA. Absolutely, Your Honor. I don't think there's any other way to characterize what the court did. And the problem is this is not something the parties agreed to. What they did agree to was a very specific methodology for the payment of child support at $2,200 a month, which would not be taxable or tax deductible, $2,800 a month in maintenance, which at the time was tax deductible to Mr. Schroeder and taxable to Ms., and then a 30% unallocated support award capped, which again would be tax deductible to Mr. and taxable to Ms. And as the Supreme Court's decision in Coulter discusses, we don't know what went into that agreement, what concessions the parties made, what horses they traded. We also don't know, and the trial court didn't know, what portion of that 30% unallocated support award was intended to support the child versus intended to support Ms. Schroeder. All we know is that the end product was what the parties agreed to. What the trial court essentially did was try to fit a square peg in a round hole, and sua sponte modified the agreement to, I don't know if it was to throw my client to bone and say we're not going to use these funds for maintenance purposes, but you still have to pay child support on them. But in doing so, it rewrote paragraph 3.3, eliminated the framework the parties had agreed upon, defied my client of certain tax benefits, and then went a step further and assessed interest, not back to the date Ms. Schroeder filed in February of 2023, but back to 2019, four years prior to filing, based upon an order, a modification I would characterize, which occurred in July of 2024. And again, the problem with this goes back to what I said earlier about how these proceedings arose. This wasn't... Well, I was going to just ask, leaving aside the legal question of whether the IRA is income or not income, as I see that as being related to the interpretation of the statutory definition of income, so that's one thing. But the finding of contempt, and I may be conflating some issues, so if I am, I apologize, which it seems to me you're complaining about now. There, we don't have the report of proceedings for the reasons that the child court made some of the rulings it did. And I guess I wonder how we could assume there weren't good reasons for some of those findings that are not statutory interpretation. Well, I would say this, Your Honor. All of the evidence that the trial court ordered is before this Court. All of the exhibits, the report of proceedings from the trial, and... There were some income that was not included in the true-up. You admit some of that. Correct. There was his raise, he'd gotten... There were some items. I'm not saying they were large, but they were there. And the trial court, as I understand it, imposed the rule, imposed interest on it. If there's child support that's due in owing, doesn't the statute in and of itself make that interest sort of self-executed? It does, Your Honor. I would agree with Your Honor's characterization with respect to the interest accruing on my client's actual income, the difference between the 187 and the 200,000 he was earning, things of that nature. But I would disagree with respect to the IRA, because that is a new order that did not exist, a new obligation that didn't exist until July of 2024. So I'm really only talking, I think it was $4,000 or $5,000 in interest assessed on that new order. Thank you. Your Honor, if someone has any other questions, I'll cede my time for rebuttal. Mary, do you have any questions? No. No. Thank you. Thank you. You will have an opportunity to make your vote. Mr. Hannum, or? Hannum, Your Honor. Thank you. You may proceed, sir. Thank you. You're going to have to give me two seconds, because I am not quite as organized as Mr. Elster. Are you conceding, then, to him? I am, Your Honor, and that would begin my concessions. You may proceed. Thank you, Justice McClaren. May it please the Court, counsel. Justices, I want to pick up where Justice Mullen's question left off with his relative to the contempt. I think the contempt is very straightforward, so I think we can get rid of it pretty quickly. At C-202-1, which is the tail end of Mr. Schroeder's closing argument, he concedes that he owed $16,500 in change, even with all of his arguments. If every one of his arguments had been accepted, he admitted that he underpaid by $16,000 and some thereabove. So I think you bring a contempt petition alleging underpayment, you stipulate the amount of income that he received in a year, he admits in closing argument that he underpaid. It's very straightforward, certainly not an abuse of discretion. I think, unless the Justices have any questions on that issue, I want to turn to what I think is the more meaty issues. Let's start with the IRA. Mr. Elster had set forth various... Counsel, a little bit of pencil here. The eraser is screaming. I have a question. Apologize, Your Honor. No problem. The pencil is still pissed, though. Apologies to the pencil. The $16,000 that you related, what was the amount when the petition for rule to show cause was filed? What was the amount then? The amount set forth in the petition was not specified because one of the issues that was before the court was Mr. Schroeder's failure to turn over the requisite information. What would it have been had it been ballpark computed? The $16,000 in change was Mr. Schroeder's admission after his payment on the eve of trial. So prior to his payment on the eve of trial, it was closer to $50,000 in change. So it was significantly higher. My attorney told me, and he testified as such, my attorney told me to make this payment. I made this payment. Then his attorney in closing argument said, even we win on every single argument, that's almost $20,000 short. So I think that when you have an obligation, you acknowledge your obligation. Mr. Schroeder certainly acknowledged in his testimony that he understood his obligation and that he was aware of it. And this was the only basis for going forward with the contempt, was for the failure to pay? The pleading had alleged his failure to turn over various documents, which then formed the basis of the specific amount. By the time the hearing occurred, Mr. Schroeder had tendered the documents. The court, in its order, had made the factual predicate because there was a lot of finger pointing below. Mr. Schroeder said, well, Ms. Steele didn't turn over her documents. Ms. Steele said that Mr. Schroeder didn't turn over his documents. And that's what we're calculating it based off of. The court rejected Mr. Schroeder's argument that it was Ms. Steele's fault that he hadn't done it, and therefore held him in contempt with the purge being the amount that the court ordered based on his failure to pay support. So to me, that's an open and shut issue, certainly not an abuse of discretion. Relative to this IRA issue that Mr. Elster talked about, he talked about the circuit split and the various things that have gone on prior to the holding in Domshell. However, Domshell addressed all of that, including specifically addressing McGrath. In addressing those cases and talking about it, the court in Domshell made clear that the sole question for, quote, unquote, double counting is whether that income had previously been included for purposes of support. Everything that Mr. Schroeder earned while the parties were married was certainly not included for purposes of support. Refining that. But, I mean, you have a contract. And in the contract, I'm talking about your MSA. And in the contract, he receives this portion, this IRA as his. So we're dividing things up. She gets this, he gets that. She gets this, he gets the IRA. So isn't it double counting when you then come in and say, I want to take the principle of that IRA for child support or support? Respectfully, no, Justice. And to that end, I'll point the court to paragraph 50 of Domshell. And the issue is, quote, to avoid double counting, the liquidation of an asset awarded in a marriage dissolution judgment is not income if the asset has previously been imputed to the party for maintenance and support purposes. Up until oral argument today, you'd never heard anything from Mr. Schroeder that that income, that that was not income. And Justice Mullen, you would ask the question of, well, what portion of your IRA did you contribute to after the divorce? Because had Mr. Schroeder proved up his factual defense of double counting, and this is where I disagree with Mr. Elster. False stop is the pre-Massachusetts case is you earned money. Money came in. Rebuttable presumption that all money that comes in under the act is income for purposes of support. Now the individual You're saying he earned money. How did he earn money? He earned money during the marriage by putting money into an IRA. Contributing to the IRA. Correct, Justice. And as well as the IRA growing, appreciating market values going up. There certainly has been some historic runs in the S&P. So there is some amount of original principle. There is some amount of growth, appreciation, interest, and otherwise. So do you take the original principle? Yes, Justice Jasek, unless it has been imputed to the party for maintenance and support purposes. Now I concede. Tom Schell says, almost every place it says that this is income in that case. They add that because it's never been previously imputed to the party for maintenance or support. You're right about that. Having said that, Tom Schell was an inheritance. So that guy never earned the money. It was acknowledged in that case at the time of the divorce that he had this inheritance, but he was just sitting on it. And the court, it seems to me, and this is my concern for this issue, is saying, well, you know, since he never paid any support on it, well, not double counting. There's no double counting issue. But they also said, and I see it a little bit differently. They talk about double counting for sure and that's something that has to be considered in every case. But the origin of the funds were something outside the marriage. And so it seems perfectly logical that at the point the father in Tom Schell starts taking distributions from that IRA, of course they're increasing his wealth. They're increasing his ability to pay support. It's adding to everything he owns at that point. But the IRA, I am concerned, is more like the savings account in McGrath because that savings account, and I think they mentioned it in McGrath's opinion, he had that and was given that at the time of the marriage and then he was just taking money from it. And the court said it's not income. Now, they did add, by the way, that if there's a need for a deviation, the fact that he has this asset can certainly be taken into account. He can't, you know, the court does not necessarily have to let him take distributions from his savings while he's unemployed while the wife and children starve, or excuse me, the ex-wife and the children starve. But they said, you know, just speaking strictly in terms of the statute, that is an income. So how would you, that's how I distinguish Tom Schell. You know, that was inherited. This wasn't. This was something they split at the time of the dissolution. Well, and Justice Mullin, to your Honor's point, dealing with how the court treated McGrath, I treat it the same way the Supreme Court did in Don Schell. At paragraph 50, and I'll quote. In Don Schell? Yes. Although it is not stated expressly in the McGrath opinion, it seems the funds had already been considered income at some point prior to the withdrawals. That's at paragraph 50 at the top here. Going further in paragraph 50, in the middle of the paragraph, stated more generally, McGrath holds that to avoid double counting, the liquidation of an asset awarded in a marriage dissolution judgment is not income if the asset has previously been imputed to the party for maintenance and support purposes. So Don Schell, our Supreme Court, looked at McGrath and found implicit in the decision that the money that went into the savings account must have already been treated as income once around. And in Don Schell, they made clear at the end, and they even say, we made clear in our holding today, that all income must be considered once, but only once for purposes of support. But essentially you're saying then that really any time, if somebody has a savings account at the time of the marriage, has never been attributed or considered with respect to child support or maintenance obligation as income, that deductions from that savings account, could that be considered income under the statute? That seemingly is the holding of Don Schell. Certainty applied here, I think, that given Mr. Schroeder's failure to put out any evidence of what constitutes gain or non-principal amounts, he sort of had failure of proof, at least with respect to that argument. But seemingly that is... But what's your response to his argument that they really weren't given notice that this is the way this hearing was going? I think that is entirely belied by the record. Both parties briefed the issue. Both parties raised it in their oral arguments in the beginning of the case. Both parties apparently pre-tried the issue with the judge. There are references, as your honors had mentioned, to discussions and analysis of cases prior to the hearing. This was all front and center before the court. This issue came up, and it did not... If you don't have the tax documentation, it's hard to know exactly how much income Mr. Schroeder's not paying support on. When all of that got figured out, when it realized there was this additional source here that had never been imputed to him as income before, that he had never paid support on before, that is when the specific issue became front and center before the court, was briefed by both sides, argued an opening argument, evidence was presented, both sides addressed it in their closing arguments, and went all the way up. So each side was well aware of this. As denoted, they had trial stipulations regarding the amount of IRA withdrawals that Mr. Schroeder had taken. And again, Mr. Schroeder had attempted to make a defense regarding some portion of the IRA that would have been his burden to show it was otherwise excluded. Legally, we start with the general legal proposition, and this is where I took issue with their standard of review. The general proposition of does the money coming in constitute income in the first instance has been answered in the affirmative by Don Schell. So now the distinction, the way that you avoid it, you're going to argue a double-counting argument. The way you factually prove your defense is by proving it was counted once before. And once the burden flips to the contender, once Mr. Schroeder put on his case in chief, once that matter went forward before the court, Mr. Schroeder has the defense to show this has previously been counted. If I am to pay child support, and I've got a withholding order, and I say, well, wait a second, I also wrote a check for $5,000 outside of the state and gave it to the payee, that's my burden to prove. Just like it was Mr. Schroeder's burden to prove what is otherwise presumptively income is excluded on the basis of a double-count. He did nothing to offer evidence to that regard. He did not suggest, here's how much I earned after the dissolution, or I contributed anything, given that he had four over one k's the entire time. I'm not sure how he could have maintained that burden, but he certainly didn't even try. His failure of proof in that regard is on him. So to the extent that a distinction could have been drawn, I don't think that is proper under Dom Schell. I think Dom Schell, the question begins and ends with, have you paid support on this money before? Business owners get businesses in divorce and continue to pay income, continue to pay support on the basis of a double-count. If in Dom Schell he was awarded the IRA as non-marital property, doesn't mean he wasn't awarded that account in the judgment there. So the court found you were awarded this, whether it's your marital or non-marital, it goes to property distribution. Even in Dom Schell, it doesn't matter for purposes of support whether it's marital or non-marital. And the court in Dom Schell also cited approvingly to Klomps where it was undisputedly marital property that was liquidated. They didn't say, well, Klomps was wrong because it was marital or something like that. And as counsel of all friends, I do agree with the First District and Eberhardt because they had talked about this factual distinction and the argument of, well, I earned it during the marriage and rejected all of that. However, Dom Schell, I do believe, really cleans up this issue on all income earned from assets. I think Dom Schell makes very clear in their holding and really concisely sums it up at the very end in the conclusion. I think that the, and they even deal with, at 62 and 63, the quote unquote alleged appellate district's discrepancy. And they dispel the following. They say, no, the real issue here is whether or not you've already paid support on this money. Mr. Schroeder never alleged a trial that he had. They argued that this should be concluded. He argued that it shouldn't. They stipulated to the amounts that he received. He didn't ever suggest that he paid support on those amounts. To me, that is that. Unless the justices have any other questions, I'm going to turn to this issue on the, out on the cap. Because I think that's another bone of contention for Mr. Schroeder. Oh, okay. I didn't hear. I thought you said talk. Cap, the support cap. They topped out Mr. Schroeder's support for purposes of an allocated support. In the marital settlement, it was what, 338 or something? Yes, the 338 is. Was that a sui sponte ruling? The removal of the cap was something that was argued, but not something that was pled. So in that sense, it was the court exercising its inherent authority and responsibility to review for issues of children. And I know justices need to ask, well, isn't the definition of income the same for maintenance and child support? I agree with you that it is. And I agree that probably, if it was Judge Sean downstairs, I'd have said it's income all the way through. But I think that even Mr. Elser would concede there's a much stronger public policy argument relative to issues on children. People are allowed to waive certain things relative to themselves. For example, in prenuptial agreements, you're allowed to waive your right to maintenance. You're allowed to waive your right to property. What are you not allowed to do? Waive your right to child support. Society, I'm going to make my own definition of child support. Your Honor said, well, it could be a factor for deviation. Okay, and in McGrath, they had talked about that, right? This idea of, well, if it's not income, you can still consider it a factor for deviation. However, if you're going to deviate, you must make the findings. If you're going to follow the law, you must follow the law. And courts have repeatedly held, and in Damm shall they go through this, that courts are not at liberty to depart from the definition. So I know, Justice Shostak, you're very familiar with Selecki, which is a case where a true cap was stricken in its entirety. And, you know, Justice, I don't know what went on in the back, but one of the things that I read, at least, was that there was nothing else in the MSA. The trial court conducted a truant that it thought, in its own imagination, should have been done. Where I disagree with Mr. Elster was that this was an untethered exercise similar to Selecki. 3.2 of the Remittal Settlement Agreement deals exactly what you do with child support. It deals specifically with he will pay 20%. And, in fact, their MSA says when you get child support that doesn't have a maintenance component for maintenance is terminated. Whatever the case may be, this is what you do with child support. So the trial court didn't have to invent its own true-up mechanism. All it had to do was read the party's MSA, follow the percentage allocation that the parties had called for, and apply it to all income because the court is not at liberty to depart from the definition of income, create its own definition of income, or even ratify parties departing from the definition of income. Now, the parties may say, this is income we're deviating for X, Y, and Z. Therefore, we're only including these certain things. But that's not what occurred here. The parties referenced, we want all income under the law. Every single thing. Here's a non-exhaustive list of examples of types of income that could go into the pot. And that included distributions. That included taking from investments. So if you call the IRA an investment, you took from it. They said that's income. So when you apply the party's definition to the party's percentage, that is where I think we depart from Selicki, where you had a trial court acting in what it thought was the child's best interest, but not following the party's contract. Here, the trial court not only acted in the child's best interest, but did follow exactly the party's contract. And in doing so, found that once you have this part where you have created an artificial definition for purposes of child support, I'm striking that. That's not enforceable. That's void. That is just like the parties in Iqbal and Khan that had a post-nuptial agreement that related to children. We strike it. For anything where we're trying to remove stock options or things like that, strike it. All of these things are routinely stricken with respect to children because children, one, do not have a voice in the negotiation, are not negotiating away their rights. And two, it is not the party's ability to negotiate away the rights of their children. They are not allowed to do so, and the court is not allowed to ratify. So when the court was presented with an issue where within the bounds of their agreement you can cap up maintenance, okay, do it. However, once you get to this impermissible void is against public policy issue of creating a cap on child support, writing our own statutory definition that does not match what the legislature has done, that is where the court said you've gone a bridge too far, and therefore I will enforce your agreement to the extent it is enforceable. And to the extent you create a limitation that is not enforceable, I am not enforcing that. And that is beyond the purview of what I could do. So, Mr. Schroeder, your defense of I don't have to pay above this is rejected because that is not an enforceable provision. So there is a severability clause here. There are all of the things that would talk about why you could go back to the other portion of their agreement and follow what the parties have set forth for you to do. They set forth here's the percentage he pays on child support where he doesn't have to pay maintenance. That is exactly what the court did. The court was true to the parties' intent and, in fact, explicit agreement in its enforcement procedures. In justices relative to the question of interest, obviously the interest that he owed pursuant to contempt he owes pursuant to his why all income or all child support in a series of judgments, and therefore he owed at the time. It is mandatory in terms of the interest there. Now, I didn't get to address my issue on cross-appeal, but I see my time has concluded. I know I have Do you want to give him five more minutes? You have five minutes to argue your cross-appeal. Thank you, Justice McClure. And again, may it please the court. Relative to our cross-appeal, we come back to the question of income, and in this case it was Mr. Schroeder's ongoing recurring receipt of insurance benefits. Now, Mr. Schroeder had benefits paid for him on behalf of his employer. He didn't dispute that there was a significant monetary value. In fact, the parties stipulated to it as part of the trial stipulations. He simply argued, I don't have to pay support on it. Did he pay anything for the health insurance? No. There's nothing in the record to suggest that it's something he paid. So it was entirely employer-provided? Correct. Well, to be clear, the part that was sought, I don't want to misspeak to the justices. I don't know if there's anything he paid out of pocket. The part that was stipulated in the trial was the portion that was paid by his employer. His employer, in the trial stipulations that preceded the case, there was a stipulation relative to the amount that was paid by his employer. Relative to the amount that was paid by his employer, if he wasn't his employer there, he'd have to pay it himself. Oh, can I have one last? So that's what's at issue in this appeal. It's not a part of health insurance premiums he might have paid. You guys didn't argue about that. You were just arguing about the employer contribution. Correct, Justice Miller. That is the very limited scope issues. If somebody else pays my expenses on my behalf, does that constitute income for me? And the argument that is advanced in response to the cross appeal that it never touched his pocket, to me is a big red herring. That is something that has nothing to do with whether it constitutes income. There are numerous cases where people are, when you have business expenses. In fact, we've codified the idea that the only thing you get to remove from business income are the actual ordinary necessary expenditures. So if you get a car through your business, that's still income. Your business pays your cell phone, that's still income. The fact that his business has paid his health insurance costs to not insignificant sums, we're talking five-figure amounts. This is not a trivial amount. This is tens of thousands of dollars that was paid on his behalf that he would have had to otherwise pay. If he would have had to go out of pocket, the fact that he didn't increases his wealth. Did you say you stipulated to that amount? The trial stipulations, Justice. I see the trial stipulations, but I don't see that. They're C-2008 and 2009. And Justice Shostak, it is at stipulation I-2B, I-4B. I-8B, 10A. Those are the various places where they stipulated the amount that the employer had contributed on his behalf. So I get back to the same idea that if somebody pays an expense on your behalf, it increases your ability to pay other things. If I don't have to pay a dollar to Blue Cross Blue Shield, I can pay that dollar to whomever I want. Whether it would be, as Mr. Shorter justified, about the IRA distributions that he gave to his wife as a gift for their joint house purchase, or he paid down credit card debt, whatever it is, he had the money to do so because he didn't have to pay health insurance. So the fact that it didn't touch his wallet is a distinction without a difference. At the point when I sat in divorce, which was a long time ago, health insurance premiums were excludable from your net and the child support was based on your net. It's a whole different, it seems to me, scheme now with income shares. And I guess I wonder what your opinion is concerning the change in the law there. I would agree with you, Justice Mullin, that there are more enumerated deductions under the 2015 version of the statute. The old version. The old version, right? And these parties did affix a guideline or a percentage order. However, when they affixed a guideline order, we addressed this in the brief, and they were talking about the 2015 law, they said, paren, West, 2015. As you look at the, what is the obligation moving forward if he doesn't owe me? What is the go forward amount? There is no similar reference. So I read their contract as saying, we're going to follow the law. The law at the time, we have a percentage number. We agree to this percentage. Then the income is going to be defined. I don't find any statutory help for them in 801, for example, that talks about cases. And they cited Connelly, a case where a petition was brought on one side of the change of law and decided on the other. So which law do you apply? In this case, the petition was brought, heard, and decided all under the 2017 law. So if you ask me in 2025, does the payment of health insurance constitute income, I would answer that in a resounding yes. And we cited Johnson in our reply brief that said, even if the justices were to find that the amendment is not applicable to the factual circumstances, it's nevertheless indicative of the intent of the legislature. So here we are 10 years removed from the old statute. I certainly believe that as you apply the facts today to a percentage order, you include all things under the law, which includes health insurance, because that deduction has been removed, as well as any other income that is earned, less the statutory deductions, unless you're deviating from the law. And once again, over my time, I appreciate the justices giving me a little bit more there. But now I think I actually do have to sit down and let Mr. Elster go. Any questions relative to what he just said?  Thank you. Thank you, Justice. Mr. Elster? Thank you, Your Honors. If Your Honors will permit, I'll address the IRA issue, then move to the health insurance. Counsel spent a lot of time talking about the Dom Schell case and the question of whether this income was previously imputed to Mr. Schroeder. I would submit that it was, because maintenance and child support were set on his income without excluding IRA contributions, without excluding money that he put into retirements. The argument being advanced today would essentially read the McGrath case out of existence. Because I've been doing this for 15 years, counsel's been doing this for as long or longer than I have. I can't think of a single case, and Judge Mullen, I imagine you haven't seen one, where the parties somehow addressed an asset division under Section 503 within the context of maintenance. And let's take this argument to its logical end. If Mr. Schroeder sold a house and Ms. Schroeder received a corresponding share of other marital assets to effectuate a 50-50 split, if he sold that house for a loss, that house was not attributed to him for maintenance or child support. He didn't pay maintenance or child support on the house. Under Ms. Schroeder's interpretation of Dom Schell, he would have to pay child support on maintenance on the net loss he received from selling a parcel of real estate. How do you figure that? Well, that money is not money that was ever attributed to him for maintenance or child support. It was not accounted for. It was simply an asset given to him. And when he liquidated that asset, irrespective of whether there was a gain or a loss, that's money in his pocket. And according to their read of Dom Schell, because it wasn't attributed to him for maintenance or support purposes, he'd have to pay income. He'd have to pay support on it. I don't think that is a reasonable interpretation. What you're basically saying is that he would have to pay on what he actually realized because it was less than what it was assessed at when it was transferred over to him. It's no different than the IRS taxing on gains rather than basis. If you sell a stock, you don't pay taxes on 100% of what you realize from the sale. You pay taxes on what you realize less what you paid for it. Justice Chastok, you raised an interesting point about the contract. And I'd point you to the McLaughlin case out of the First District in 2012, where, granted this was in the context of maintenance, but there as here, both parties explicitly waived any and all interest they had in the other's retirement accounts and addressed this very issue and said, Mrs. doesn't get any portion of the IRA because she signed an MSA that waived her interest in that money. We have the exact same language here, the exact same waivers. Now, with respect to burdens, Mr. Hamlin and I can sit up here and point our fingers at each other and say he had the burden, she had the burden. I don't think that's productive. I don't think that either party should win on a technicality. We both dispute who had the burden. I don't think that Ms. Schroeder, as the movement, satisfied her burden of showing exactly what was owed. But I'm proposing this court follow the First District's lead and say, look, we're not going to decide this case on a technicality. The trial court did not hear the evidence. It should. Cases should be decided on the merits. And under the framework espoused in Verheens, O'Daniel, Luderich, send it back to determine what percentage of this money was principal, what was interest and appreciation, and go from there. Now, regarding the cap, your Honor has asked, was the striking of it sua sponte? Absolutely. The court's order specifically says this is sua sponte. I would dispute the notion that it's untethered to anything in the MSA. I would agree that parties decided that when maintenance terminated, when Mr. Schroeder no longer owed a monthly maintenance obligation or an unallocated support obligation to his former wife, that 20% order would kick in. That was a decision that they made based upon what they perceived to be the needs of their child at the time. There was still a maintenance order in place, and there was in 2024. So to suggest that because the parties agreed to something in Circumstance A, it therefore should apply in Circumstance B, I think is untethered from the record of reality. But to a broader point, there was no authority to do this. You know, the question is one of void versus voidable. And I'd cite to your Honors to the Supreme Court's decision in Transfer, which came out after we filed our brief, I believe, where the court affirmed the distinction where a void order is one entered without personal or subject matter jurisdiction, whereas a voidable order, and therefore one only subject to direct attack, not subject to collateral attack, is one where maybe the trial court exceeded its authority or got it wrong. At best, this was a voidable order. And this goes back again to my first point about how these proceedings arose. If this was a modification proceeding, if somebody had actually directly challenged this cap, the trial court would have been in a situation where the parties could brief the issue, not only on the enforceability, because no court has ever passed on the question of caps and unallocated support, which have both maintenance and child support components. But even assuming it's contrary to public policy, had this happened the right way, there would have been a modification proceeding or a declaratory action where the parties could have briefed it and also put evidence before the trial courts. But what's your response to counsel that you had that opportunity and you didn't take it? I don't believe we did, Your Honor. It was not raised in any pleading. I think the first time I saw the words cap and unenforceable come up were in opening arguments on the day of trial. At that point, the discovery's closed, the exhibit lists have been exchanged, everything's more or less set in stone. If this was going to be at issue, I imagine both parties would have tried this case differently and put on evidence of what the allocated support and allocated maintenance should have looked like, and respectfully, that should have happened under the new guidelines, under the post-2017 amendments. But because the trial court struck this sua sponte in the context of enforcement, that could not happen. And I think that was error. Turning to the cross-appeal, I submit that Your Honor should decline the invitation to become the first court in this state to ever treat employers' subsidized health insurance premiums as income, because they're not. Why not? Because under the definition of income, they do not facilitate a parent's ability to support his children or constitute a gain or benefit that enhances his wealth. Why not? I mean, if you're getting your health insurance paid, that's very sweet, isn't it? It is, Your Honor, but, you know, it's one of those benefits that also benefits the employer. Most employers, and certainly a... That doesn't really matter. Everything benefits the employer. They want you to be there. They could give you a car. Sometimes they do. They could give you an apartment. Sometimes they do. Bottom line, though, is those are still recognized as income for the purposes of child support payments. Well, a car allowance would be. A meal allowance would be. And the rationale is that Mr. Schroeder could take that money that his employer gives him and choose to walk or ride his bike instead of rent a car. You know, let's take this to its logical end. If his employer provides lunch... I guess I'm concerned about that because I see that as a benefit to him. I don't know why it's not income. It's a benefit to her because it ensures that there will be health insurance and so forth. More than this. That doesn't change anything, because it's really a statutory interpretation issue. Is it income? I just don't see how it isn't. Again, Your Honor, I think the difference is a meal allowance versus providing him with lunch. If his employer provides lunch on Fridays, he doesn't have to go out and spend money to buy lunch. Do we have to figure out the value of a slice of pizza? Right, and he does not have a single dollar more. If his employer gives him a car versus a car allowance, he does not have a single dollar more. He doesn't have a choice to pocket this money. There's no indication in the record that if he declined insurance, that his employer would pay him more. And when I said this benefits Ms. Schroeder, under the MSA, if he loses his job, the parties split the cost of health insurance 60-40. They have to split the cost of uncovered medical expenses 60-40. So in a way, it's almost a double dip. She's trying to both take advantage of the fact that by gaining more support from the fact that he gets an employer-subsidized health insurance, but she's also not paying money out of her own pocket because he has that employer-subsidized health insurance. If he didn't get the employer-subsidized health insurance, would he maybe get paid more? There's no indication of that in the record, candidly, Your Honor. I've never seen that happen because it's not in the nature of an employee benefit. Again, most employers have group plans, and adding one, you know, if an employee opts out, they don't get paid more. And to Your Honor's question, yes, he does contribute out of his own pockets to health insurance premiums. He has a supplemental record at page 140. He pays about $215 per pay period for health insurance. But that's not an issue, right? No, but Your Honor had asked the question, so I wanted to address it.  If Your Honor has no further questions, I believe I am out of time. Thank you for your time. It's my understanding now that we're done. Okay. We have an opportunity to make, I guess it's called, sir rebuttal? Or miss rebuttal? Whatever the name may be, good afternoon, Justices. May it please the Court again, Counsel. Addressing the issues on the cross appeal only unless the Justices have any questions on the underlying appeal. Everything that Mr. Elster said is colorful, articulate, well-spoken, none of it exists in the statute. It's not income unless your employer also derives a benefit. It's not income unless your former spouse may have some future obligation. But how about the fact that the analogy that he makes of free lunch versus lunch money, or a car versus a car allowance? I mean, how is this any different? He's not getting the money in his hands for this insurance and saying, hey, maybe I'll buy it, maybe I won't. It's given to him. And Justice Schotzik, I think that Mr. Elster's point about the supplemental record answers that question, which is Mr. Schroeder only had to pay $250 per month, as opposed to the $1,500 benefit that he received. Who does the insurance cover? The insurance covers him and his new family, and the minor child is also a part of the family today. He's got a new spouse, and I believe they've got additional children. She has children, but there's a whole family that is covered. And that does include the minor child. Correct, it does include here. And again, this gets back to this idea of, well, I want a portion of it excluded. Whose burden is it to show that that portion should be excluded? The person who owes the money has an obligation to show that this is otherwise outside of what would be presumptively income. So Mr. Schroeder did receive the funds. I don't believe there's any portion that you could say is specifically attributable to the minor child, because he's on a family plan as it is. Well, that's the thing. How do you differentiate these funds? Because as Mr. Elsner said, you know, it's a group plan. So how do you differentiate what's going for the child, what's going for his new wife, what's going for his new family, if there is one? I don't know. I mean, isn't that a little difficult to differentiate that as far as income is concerned? Especially Justice Ossoff, I think all that's income. I think that if you look at the statute, there isn't an exception for if it goes to your new wife or if it goes to pay your family or if it goes to receive a somewhat latent benefit to your former spouse. None of these exceptions are found in the Act. And so when we get back to where is my cornerstone, my cornerstone is the IMDMA. We look at the Act, we look at the definitions under the Act, and we look at the Supreme Court precedent that says courts are not at liberty to depart from that definition. So the question is, does this fall under that definition? The parties at trial were able to stipulate to the dollar how much that value was. It's undisputed that he got a value. In fact, they stipulated to the value. You have this idea of, well, what would he have had to done? He would have had to pay more. And could he have then sought a contribution or something else? Maybe, but he didn't have to, because all of this was paid on his behalf. Because all of these funds that went in, and the site now replies into the case, where the court cited approvingly to an expert that said, these are expenses that should have been attributed directly to the respondent. So here they had written him a check and said, use this to pay your health insurance. Or they had shown a deduction, here's your gross pay, and we're going to show you the number. He had the ability to figure out the exact dollar figure that he was getting the benefit of. And the fact that he had to pay a little bit on top of that only highlights the fact that it is, in fact, a benefit. Does the employer break that out in any documentation they provide the employee? There is sufficient information for the parties at trial to be able to stipulate to the exact figure. I don't know, neither counsel nor I were trial-level counsels in this. There was Mr. Elster's office, but somebody else there in my office did not handle it at the trial level. I don't know what led to the stipulation, but it was factually not disputed the amount of benefit that Mr. Schroeder received. What was disputed was, does this constitute income? Does it constitute income if you receive a benefit of a monetary value on a recurring basis that is of a significant amount that you would otherwise legally be obligated to do? It's legally obligated to maintain health insurance. So what would he have had to done? Go out of pocket. The fact that they reached their pocket and put it in the way of his doesn't make it any less a benefit. And I think just to suggest, well, what's the difference between a car allowance and a car? I don't see a great deal of distinction, other than I know the cases have talked about the safety. Case law treats it differently, though. There are prior cases that treated the issue differently. I think it's a distinction without a difference, because if you're getting that benefit and you would otherwise have to pay it yourself, the fact that it wasn't given to you to then turn around and pay to the group insurance policy is just another step that is, again, an exception that is found nowhere in the Act. So unless the Justices have any questions, I believe my time is up. We'll take the case under advisement. This is the last case on the call. Court is adjourned.